# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 15-520V

| | |
|---|---|
| A.S., *a minor*, *by her parents*, JEREMY AND KIMBERLY SVAGDIS | UNPUBLISHED |
| Petitioners, | Special Master Katherine E. Oler |
| v. | Filed: June 4, 2020 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Interim Attorneys' Fees and Costs |
| Respondent. | |

*Michael G. McLaren*, Black, McLaren, et al., PC, Memphis, TN, for Petitioners.
*Ronalda E. Kosh*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On May 21, 2015, Jeremy and Kimberly Svagdis ("Petitioners"), on behalf of their minor daughter A.S., filed a petition for compensation under the National Vaccine Injury Compensation Program,[2] alleging that their daughter suffered from the development of "infantile spasms, seizures, developmental regression/delays, epileptic encephalopathy, and/or other neurologic and/or physical impairments and other injuries" as a result of the "DTaP, IPV, Hib, Hepatitis B, Prevnar, and/or RotaTeq vaccinations she received on June 18, 2012. Pet. at 1, ECF No. 1.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I intend to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the ruling will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

On September 26, 2019, Petitioners filed their application for interim attorneys' fees and costs, requesting **$177,950.70** in attorneys' fees and **$67,568.21** in costs, for a total of **$245,518.91**. Fees App. at 2, ECF No. 72.

Respondent filed a response to Petitioners' application on October 9, 2019. Fees Resp., ECF No. 76. Respondent states that "[n]either the Vaccine Act nor Vaccine Rule 13 requires [R]espondent to file a response to a request by a petitioner for an award of attorneys' fees and costs." *Id.* at 1. Respondent adds that he "defers to [me] to determine whether or not [P]etitioner has met the legal standard for an interim fees and costs award…." *Id.* at 2. Respondent did not raise any specific issue with respect to reasonable basis or good faith. *See generally* Fees Resp. In fact, Respondent "is satisfied that the statutory and other legal requirements for an award of attorneys' fees and costs are met." *Id.*

For the reasons discussed below, I hereby **GRANT IN PART** Petitioners' application and award a total of **$214,035.38** in interim attorneys' fees and costs.

**I.     Legal Standard**

*A.  Interim Attorneys' Fees and Costs*

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Human Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Human Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Human Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Human Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Human Servs.*, 94

2

Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Human Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Human Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

### B. Good Faith and Reasonable Basis

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as a petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

It is incumbent upon petitioners to "affirmatively demonstrate a reasonable basis," which is an objective inquiry. *McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011); *Di Roma*, 1993 WL 496981, at *1. When determining if a reasonable basis exists, many special masters and judges employ a totality of the circumstances test. The factors to be considered under this test may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). This "totality of the circumstances" approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

A petitioner's counsel is expected to make a pre-filing inquiry into a claim to ensure that it has a reasonable basis. *See Turner*, 2007 WL 4410030, at *6-7. Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Id*. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015). The evidence presented must be "sufficient to give the petitioner a reasonable expectation of establishing causation." *Bekiaris v. Sec'y of Health & Human Servs.*, No. 14-750V, 2018 WL 4908000, at *6 (Fed. Cl. Spec. Mstr. Sep. 25, 2018). Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Id*.

The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis because the

petitioner could not meet the burden of proof needed to establish reasonable basis." *Chuisano v. United States*, 116 Fed. Cl. 276, 286 (2014). In rationalizing its decision, the *Chuisano* court highlighted the ruling in *Austin* as an example of a petition that minimally crossed the required evidentiary threshold. *Id*. at 292, citing *Austin v. Sec'y of Health and Human Servs.,* No. 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013). In that case, the special master found reasonable basis where only a single notation by a medical provider linked the alleged injury to the vaccination. *Austin*, 2013 WL 659574, at *8. Still, the Court in *Chuisano* emphasized the totality-of-the-circumstances test, and stated that "[a]n evidentiary standard may serve as an excellent guidepost in fee decisions, but it cannot serve as the bright-line threshold. Such a rigid position is at variance with the flexible structure of the [V]accine [P]rogram." *Chuisano,* 116 Fed. Cl. at 287. While the statute does not define the standard for reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Id*.

## II. Discussion

### A. Undue Financial Hardship

The parties are currently completing the record following an entitlement hearing I held on September 5-6, 2019. Petitioners and their counsel have been litigating this claim for nearly five years, and Petitioners' counsel has filed billing records dating back more than six years. Thus, I find it reasonable to award interim costs at this juncture to avoid any undue financial hardship.

### B. Good Faith and Reasonable Basis

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and in fact affirms that Petitioners have met the statutory and other legal requirements for an award of attorneys' fees and costs. *See* Fees Resp. at 2. I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is a much lower standard than the burden to prove entitlement to compensation by preponderant evidence. In making a reasonable basis determination, I must look at a totality of the circumstances, taking into account the factual basis for the claim and the medical and scientific support offered. Petitioners have filed extensive medical records in this case. Petitioners have also submitted four expert reports in which experts Dr. Gershwin, Dr. Kinsbourne, and Dr. Boles have offered a medical opinion supporting Petitioners' theory and a potential mechanism for causation. Ex. 17, ECF No. 28-1; Ex. 30, ECF No. 29-5; Ex. 37, ECF No 40-1; Ex. 62, ECF No. 84-1. Each expert filed medical literature in support of their reports, and Petitioners provided expert testimony at the entitlement hearing. As such, I find that the petition has a reasonable basis.

As there is no other reason to deny the award of interim attorneys' fees and costs, I will award Petitioners' reasonable fees and costs in this instance.

### C. Attorneys' Fees

Petitioners request a total of $177,950.70 in attorneys' fees. Fees App. Ex. A. at 19.

*i. Reasonable Hourly Rate*

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11).  In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

Petitioners' counsel, Mr. Michael McLaren, requests that the following rates be awarded for work performed from 2013 to 2019.

| Timekeeper | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|---|---|
| M. McLaren | $380 | $395 | $410 | $425 | $440 | $456 | $473 |
| W. Cochran | N/A | $335 | $345 | $355 | $365 | $377 | $391 |
| C. Webb | N/A | $285 | $295 | $305 | $315 | $326 | $338 |
| Law Clerks | N/A | $140 | $145 | $145 | $148 | $153 | $156 |
| Paralegals | N/A | $130 | $135 | $140 | $145 | $150 | $155 |

Fees App. at 10.

The rates requested by Petitioners for Mr. Webb, Mr. Cochran, and the firm's law clerks and paralegals are in line with McCulloch and have been awarded in the Program previously. *See Teter ex rel. S.T. v. Sec'y of Health & Human Servs.*, No. 17-1801V, 2019 WL 2406958 at *2 (Fed. Cl. Spec. Mstr. May 17, 2019); *Sturdevant v. Sec'y of Health & Human Servs.*, No. 17-172V, 2019 WL 4568158 at *3 (Fed. Cl. Spec. Mstr. Aug. 26, 2019); *Dix v. Sec'y of Health & Human Servs.*, No. 17-1859, 2019 WL 4467108, *3 (Fed. Cl. Spec. Mstr. June 25, 2019).  I find these rates reasonable and award them in full, with the exception of Mr. McLaren's rates for 2018

---

[3] The 2015–2016 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.
The 2017 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.
The 2018 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.
The 2019 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

and 2019, which require an adjustment. In accordance with *McCulloch* and other decisions in the Program, I will reduce Mr. McLaren's 2018 rate to $455.00 and his 2019 rate to $464.00. *See Dix*, 2019 WL 4467108, at *2; *Sturdevant*, 2019 WL 4568158, at *3; *Teter ex rel. S.T*, 2019 WL 2406958, at *2. This results in a total reduction of **$3.40** for 2018 and a reduction of **$583.20** for 2019, for a total reduction of **$586.60**.

### ii. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

#### a. Administrative Billing

Upon review, I have noted several issues which, when taken together, warrant a reduction to the overall billed hours. Paralegals routinely billed for administrative tasks, such as tracking and processing invoices for medical records and filing documents. Many routine court filings were reviewed by two, three, or sometimes even four individuals, which is excessive in my experience. For example, on December 5, 2017, a law clerk noted "case reassignment to special master Oler," as did Mr. McLaren. Fees App. at 28. On December 6, 2017, Mr. Webb billed to "receive, review, and note notice of reassignment." *Id.* Then on December 7, 2017, Mr. McLaren again billed to "go over re-assignment." Such administrative tasks comprise over 150 entries in the Schedule of Fees.[4] While the firm is certainly free to utilize its staff in the way it feels they are best suited to aid the case, billing judgment must also be exercised to make sure that overbilling from overstaffed cases does not occur. In this case, the billing records give the impression that much of the paralegal work overlapped in a way that created a greater amount of work for everyone to manage.

I therefore find that a five percent reduction for administrative billing is appropriate in this case. This results in a reduction of **$8,897.54.**

#### b. Excessive Billing

Counsel has also included entries which are excessive in nature. For example, after filing

---

[4] This also includes interoffice communication, particularly between staff in the receiving and handling of records.

pre-hearing briefs, counsel spent 137.2 hours for a total of $47,213.60 across all timekeepers preparing for trial, including 71.2 hours spent by Mr. Webb alone. Fees App. at 37-43. In my experience, this is excessive for a two-day entitlement hearing . I therefore reduce this by one-fourth, resulting in a reduction of **$11,803.40**.

I therefore award Petitioners **$156,663.16** in attorneys' fees ($177,950.70 – $586.60 - $8,897.54 - $11,803.40).

### D. Reasonable Costs

Petitioners request a total of $67,586.21 in costs, which includes expert witness fees, Petitioners' costs for hearing attendance, hearing-related travel, obtaining medical records, postage costs, and the Court's filing fee. Fees App. at 47.

#### i. Petitioners' expert costs

##### a. Dr. Marcel Kinsbourne

Petitioners requests $2,000.00 for the work of Dr. Marcel Kinsbourne. Fees App. at 47. While Petitioners submitted an expert report from Dr. Kinsbourne, Petitioners have not submitted an invoice from Dr. Kinsbourne. I therefore do not award Petitioners costs related to the work of Dr. Kinsbourne and reduce the total requested costs by **$2,000.00**.

##### b. Dr. Eric Gershwin

Petitioners request $37,682.70 for expenses related to the work of Dr. Eric Gershwin. Fees App. at 47-49.

Dr. Gershwin billed for 76.75 hours of work, at a rate of $450.00/hour, (23.75 hours on July 12, 2017, 2 hours on November 3, 2017, 3 hours on July 10, 2019, 40 hours between September 1 and September 8, 2019, and 8 hours between September 12 and September 15, 2019) for a total of $34,537.50. Dr. Gershwin has previously been awarded his requested rate and I see no reason to disturb such a request. *See Hoskins v. Sec'y of Health & Human Servs.*, 2017 U.S. Claims LEXIS 134 (Fed. Cl. Spec. Mstr. July 12, 2017). In examining his invoice entries, I find the amount of time Dr. Gershwin expended in reviewing his own expert reports, Petitioners' reports and associated medical literature in preparation for the hearing to be reasonable. Accordingly, I award him **$34,537.50**.

Dr. Gershwin also requests $4,157.70 for travel expenses. In examining his travel invoices, it appears that Dr. Gershwin traveled business class to and from the entitlement hearing. Fees App. at 126. In addition, it appears that Dr. Gershwin took a private limousine to and from his home to the airport, rather than a standard taxi. *Id*. Business class travel is not compensable in the Program. Accordingly, I reduce his requested travel reimbursement by half and award him $1,021.30.[5] I will

---

[5] I note that, due to the current Covid-19 crisis, a search of United.com and other airlines is not likely to reflect the price that Dr. Gershwin would have paid for a coach class ticket and therefore find that reducing his airfare by half is the fairest way to compensate him.

also reduce Dr. Gershwin's limousine travel by half and award him $384.14.[6]

Accordingly, I reduce Petitioners' claimed expert expenses related to Dr. Gershwin by **$1,405.44**

### c. Dr. Richard Boles

Petitioners request $20,500.00 for the work of Dr. Richard Boles. Dr. Boles billed for 41 hours of work, at a rate of $500.00/hour, for a total of $20,500.00.

Dr. Boles has very little experience in the vaccine program and has not previously been awarded the requested rate of $500.00/hour. *See A.A. v. Sec'y of Health & Human Servs.,* 2018 U.S. Claims LEXIS 762, at *15 (Fed. Cl. Spec. Mstr. May 31, 2018) (Special Master Gowen reducing Dr. Boles from $500.00/hour to $350.00/hour); *Dempsey v. Sec'y of Health & Human Servs.*, 2017 WL 634870 (Fed. Cl. Spec. Mstr. Mar. 28, 2012) (Special Master Dorsey reducing Dr. Boles' requested rate from $500.00/hour to $350.00 hour). Accordingly, I will award Dr. Boles a rate of $350.00/hour. This results in a reduction of **$6,150.00**.

### ii. Counsels' Expenditures

Petitioners also request reimbursement for several travel-related expenditures. I find these to be largely reasonable, but a few adjustments are required, due to the excessive nature of some costs.

The amount requested by Mr. Webb related to his San Diego travel on November 3, 2017 is confusing. *See* Fees App. at 71-73. Mr. Webb requests $379.50 for this air travel, or $1,518.00 divided by 4.[7] *See* Fees App. at 48. However, it appears that the price of a coach flight for this trip was $824.10. *Id.* at 114. Mr. Webb appears to have flown first class, then used miles in order to bring the price down in order to "get close to coach flights needed." *Id.* In this case, I will award Mr. Webb $824.10 divided by 4, or $206.03. This is a reduction of **$173.20**.

Related to this travel, Mr. Webb also appears to have switched his flight in order to "avoid red-eye after delays and other circumstances would have forced it." Fees App. at 120. Accordingly, Mr. Webb added a one-night layover in Los-Angeles to his trip. This added a $306.68 expense to Mr. Webb's costs,[8] and Mr. Webb requests $76.67 of it here. Mr. Webb provides no supporting documentation regarding these delays and "other circumstances." I therefore will not compensate him for his overnight stay in Los Angeles, and reduce the requested costs by **$76.67**.

---

[6] I note that Dr. Gershwin's taxi to and from Dulles airport was $80.00. The limousine service charged $384.14 for a one-way trip.

[7] Mr. Webb divided the cost of this flight amongst four different cases.

[8] Mr. Webb divided this cost amongst four cases.

8

Finally, Mr. McLaren billed for two meals at Ocean Prime restaurant.  The costs of $260.98 on September 4, 2019 and $147.70 on September 6, 2019 are an excessive amount to spend on one meal, and I will not reimburse this cost.  Accordingly, I will reduce the requested costs by **$408.68**.

                *iii.  Petitioners' miscellaneous costs*

I find all other costs incurred by Petitioners' counsel to be reasonable and therefore award them in full.

Total costs to be awarded: **$57,372.22** ($67,586.21 - $2,000.00 - $1,405.44 - $6,150.00 - $173.20 - $76.67 - $408.68).

    **III.**    **Conclusion**

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioners' application, as follows:

A lump sum in the amount of **$214,035.38**, representing reimbursement of Petitioners' interim attorneys' fees and costs (including expert witness costs), in the form of a check jointly payable to Petitioners and their attorneys, Black, McClaren et. al., PC.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[9]

Any questions regarding this Order may be directed to my law clerk, Neil Bhargava, by email at neil_bhargava@cfc.uscourts.gov.

    **IT IS SO ORDERED.**

                                            **s/ Katherine E. Oler**
                                            Katherine E. Oler
                                            Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.