# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 15-520V

```
* * * * * * * * * * * * * * * * * * * * * * *   *
                                                *
                                                *
A.S., a minor, by her parents JEREMY            *
SVAGDIS and KIMBERLY SVAGDIS,                    *
                                                *
               Petitioner,                      *      Special Master Katherine E. Oler
                                                *
                                                *
v.                                              *      Filed: July 28, 2023
                                                *
SECRETARY OF HEALTH AND                         *
HUMAN SERVICES,                                 *
                                                *
               Respondent.                      *
                                                *
* * * * * * * * * * * * * * * * * * * * * * *
```

*Michael McLaren*, Black McLaren, et al., PC, Memphis, TN, for Petitioner
*Ronalda Kosh*, U.S. Department of Justice, Washington, DC, for Respondent

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On May 21, 2015, Jeremy and Kimberly Svagdis ("Petitioners") filed a petition on behalf of their minor child, A.S., seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2] Pet., ECF No. 1. Petitioners alleged that A.S. developed "infantile spasms, seizures, developmental regression/delays, epileptic encephalopathy, and/or other neurologic and/or physical impairments and other injuries" as a result of the diphtheria, tetanus, and pertussis ("DTaP"), inactivated poliovirus ("IPV"), Haemophilus influenzae type b ("Hib"), hepatitis B, Prevnar, and Rotateq vaccines she received on June 18, 2012. Pet. at 1.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

I awarded Petitioners $214,035.38 in interim attorneys' fees and costs on June 4, 2020. ECF No. 89. I issued a decision denying entitlement on February 17, 2022. ECF No. 100. Petitioners filed an Application for Final Fees and Expenses on May 23, 2022, requesting a total of $65,137.73. ECF No. 104 at 1 (hereinafter "Fees Application" or "Fees App."). Respondent filed a response (hereinafter "Fees Response" or "Fees Resp.") on June 6, 2022, stating that Petitioners have met the statutory requirements for an award of attorneys' fees and costs and requesting that I exercise my discretion and determine a reasonable award for attorneys' fees and costs. Fees Resp. at 2-3, ECF No. 105. Petitioners did not file a reply brief.

On June 27, 2023, I ordered Petitioners to file documentation of all out-of-pocket expenses for which they seek reimbursement. ECF No. 107. On July 25, 2023, Petitioners filed a supplemental brief with documentation of their out-of-pocket costs. ECF No. 108 ("Supp. Fees App.").

This matter is now ripe for consideration.

I hereby **GRANT IN PART** Petitioners' application and award a total of **$65,087.73** in attorneys' fees and costs and a total of **$4,870.65** in Petitioners' out of pocket costs.

## I.    Legal Standard

### A.  Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioners had an honest belief that their claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### B.  Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *6-7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Instead, the claim must be supported by objective evidence. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found

that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius*, 984 F.3d at 1380 (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.   Discussion

### A.  Good Faith and Reasonable Basis

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See* Fees Resp. at 2-3. In my decision awarding interim attorneys' fees and costs, I determined that the petition was filed in good faith and had a reasonable basis. ECF No. 89 at 4. I find that the good faith and reasonable basis have continued for the duration of Petitioners' claim. Accordingly, there is no other reason to deny an award of attorneys' fees and costs; I will award Petitioners reasonable fees and costs in this instance.

### B.  Attorneys' Fees

Petitioners request a total of $52,103.10 in attorneys' fees. Fees App. at 1.

1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

Petitioners' counsel, Mr. Michael McLaren, requests rates of $464.00 per hour for work performed in 2019; $484.00 per hour for work performed in 2020 and 2021; and $501.00 per hour for work performed in 2022.

Mr. McLaren also requests the following hourly rate for his colleagues at Black McLaren, et al., PC ("Black McLaren"): for Mr. Chris Webb: $338.00 per hour for work performed in 2019; $351.00 per hour for work performed in 2020; $364.00 per hour for work performed in 2021; and $395.00 per hour for work performed in 2022; for Mr. William Cochran, Jr., $405.00 per hour for work performed in 2020; and $420.00 per hour for work performed in 2021. Fees App., Ex. 2 at 1-16.

Lastly, Mr. McLaren requests rates ranging from $155.00 to $167.00 per hour for paralegal work performed between 2019 and 2022. Fees App., Ex. 2 at 16.

This request is consistent with what I and other special masters have previously awarded Mr. McLaren and his associates at Black McLaren. *Sims v. Sec'y of Health & Hum. Servs.,* No. 15-1526V, 2023 WL 2234265, at *3 (Fed. Cl. Spec. Mstr. Feb. 27, 2023); *Pankiw v. Sec'y of Health & Hum. Servs.*, No. 15-1082V, 2022 WL 17851635, at *2 (Fed. Cl. Spec. Mstr. Nov. 30, 2022); *Thompson v. Sec'y of Health & Hum. Servs.*, No. 18-1217V, 2022 WL 16579474, at *5

---

[3] The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%2 7%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The 2020 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%2 7%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf
The 2021 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Fo rum-Rate-Fee-Schedule-2021-PPI-OL.pdf
The 2022 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys% 27-Forum-Rate-Fee-Schedule-2022-%28Final%29.pdf.
The hourly rates contained within the schedules are updated from the decision in *McCulloch*, 2015 WL 5634323.

(Fed. Cl. Spec. Mstr. Sept. 27, 2022). Accordingly, I find that the requested rates are reasonable, and that no adjustment is warranted.

### 2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioners bear the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), mot. for rev. denied, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

I have reviewed the invoices submitted as Ex. 2 to the Fee Application and I find that the hours expended in this matter are reasonable.

Total attorneys' fees to be awarded: **$52,103.10**

### C. Reasonable Costs

Petitioner requests a total of $13,034.63 in costs, which includes Drs. Kinsbourne, Gershwin, and Gropman's expert fees, counsel's travel expenses, court reporter fees, and one shipping charge. Fees App., Ex. 2 at 16-36. Documentation was provided for the travel expenses, court reporter fees, and shipping charge, and these will be paid in full. I discuss the other requests below.

5

1.  <u>Petitioner's Expert Costs for Marcel Kinsbourne, M.D.</u>

Dr. Kinsbourne submitted one expert report in this matter. Ex. 17. Petitioner requested reimbursement for Dr. Kinsbourne's $2,000.00 retainer fee in their interim fee application, but I denied the request because no documentation was provided. ECF No. 89 at 7. Petitioners provided documentation of Dr. Kinsbourne's retainer fee with the Fee Application. Fees App., Ex. 2 at 18. I find Dr. Kinsbourne's fee to be reasonable and will grant it in full.

2.  <u>Petitioner's Expert Costs for M. Eric Gershwin, M.D.</u>

Petitioner requests an hourly rate of $450.00 for seven hours of work performed in 2019 and 2020, totaling $3,150.00; Fees App., Ex. 2 at 27, 34-35. He also requests an hourly rate of $500.00 for one hour of work performed in 2021. *Id.* at 36. I granted Dr. Gershwin's request for an hourly rate of $450.00 in Petitioners' interim fee request. Both rates are also consistent with what I and other special masters have awarded Dr. Gershwin in previous cases. *See, e.g., Antalosky v. Sec'y of Health and Hum. Servs.*, No. 16-701V, 2022 WL 363916 (Fed. Cl. Spec. Mstr. Jan. 24, 2022); *Stuart v. Sec'y of Health and Hum. Servs.,* No. 16-940V, 2022 WL 176145 (Fed. Cl. Spec. Mstr. Jan. 5, 2022); *Rogan v. Sec'y of Health and Hum. Servs.*, No. 17-1916V, 2020 WL 5814285 (Fed. Cl. Spec. Mstr. Sept. 4, 2020).

Accordingly, I find that Dr. Gershwin's requested hourly rates and the number of hours expended were reasonable and I grant him his requested fees in full.

3.  <u>Petitioner's Expert Costs for Andrea L. Gropman, M.D.</u>

Petitioner requests reimbursement for Dr. Gropman's $2,200.00 retainer, an hourly rate of $550.00 for one hour of work, and $29.00 for obtaining access to medical literature. Fees App., Ex. 2 at 29, 31.

Dr. Gropman did not submit an expert report or testify in this case. According to Petitioners, Dr. Gropman "reviewed this case in-depth and consulted with Petitioners' counsel." Fees App. at 4. Petitioners also claim that Dr. Gropman "is an experienced expert and has testified on many occasions in the Vaccine Program." *Id.* Her CV was not filed into the record.

A review of prior cases reveals that Dr. Gropman has served as an expert consultant in one previous case. *Reed v. Sec'y of Health & Hum. Servs.*, No. 08-650V, 2019 WL 2500417, at *5 (Fed. Cl. Spec. Mstr. May 21, 2019). She was awarded her requested hourly rate of $400.00 for work very similar to her work in the instant case. *Id.* Like attorneys, experts are entitled to increases in their hourly rates over time. *Mason v. Sec'y of Health & Hum. Servs.,* No. 17-1383V, 2022 WL 4693380, at *3 (Fed. Cl. Sept. 8, 2022) ("Program experts should not be tethered to a single fixed rate for all time, but are entitled to increases to account for inflation just as attorneys receive rate increases."). However, I note that an hourly rate of $550.00 has been reserved for the Program's more experienced experts. *See, e.g.*, *Morrison v. Sec'y of Health & Hum. Servs.*, No. 18-386V, 2023 WL 1873254, at *7 (Fed. Cl. Spec. Mstr. Feb. 10, 2023) (citing *Mason*, 2022 WL 4693380, at *3 ("Although I have previously awarded Dr. Steinman the lesser rate of $500.00 per hour, his

demonstrated experience with the Vaccine Program has recently been deemed grounds for a slight rate increase.")).

Accordingly, I find that $500.00 is an appropriate hourly rate for Dr. Gropman's work, resulting in a reduction of $50.00. I grant her retainer and fees for obtaining medical literature in full.

### 4.   Petitioners' Out of Pocket Travel Costs

In the Application, Petitioners requested a total of $6,004.36 in out-of-pocket travel costs related to their attendance at the entitlement hearing on September 5 and 6, 2019. Fees App., Ex. 3. Specifically, Petitioners requested $2,803.02 for hotel rooms, $1,219.84 for "4 flights to and from Washington D.C.," $1,672.00 for meals (based on a per diem of $76.00 per person per day), and $309.50 for ground transportation (one shuttle and one taxi). *Id.* at 2. Petitioners provided no documentation for the majority of these items.

In response to my June 27, 2023, order to file documentation, Petitioners filed a supplemental brief in which they reduced their request for reimbursement to a total of $5,173.89. Supp. Fees App. at 1. This includes $2,803.02 for flights, $1,198.76 for hotel rooms, $862.61 for meals, $40.00 for airport parking in Austin, Texas, and $269.50 for a shuttle to and from the airport in Washington, D.C. *Id.* at 2.

To begin with, I note that some of the documentation Petitioners provided is less than fully clear. The supplemental brief contains a spreadsheet listing all of the expenses for which Petitioners seek reimbursement, but two of the descriptions of items in the spreadsheet are not consistent with the documents themselves. First, Petitioners seek reimbursement for "Flight – Amelia." Supp. Fees App. Ex. 1. However, the receipt for this flight lists the passenger as Kathleen Svagdis. Supp. Fees App. Ex. 2 at 13. Second, Petitioners seek reimbursement for "Flight – Kathleen." Supp. Fees App. Ex. 1. However, the receipt for this cost reflects the purchase of assigned seats on the flights for Petitioners and their children. Supp. Fees App. Ex. 2 at 12.

### a.   Flight, Hotel, and Transportation for Petitioners and Their Children

The total cost of airfare (including assigned seats) for Petitioners and their two minor children is $893.80. Supp. Fees App. Ex. 2 at 12, 14. I find that this is reasonable, and it will be paid in full.

The documents filed reflect that Petitioners and their children traveled from Austin, Texas, to Washington, D.C., on September 3 and departed on September 7, 2019. Supp. Fees App. Ex. 1; Supp. Fees App. Ex. 2 at 14. Furthermore, Petitioners paid for their hotel stay partly in cash and partly with what appear to be credit card or hotel loyalty points.[4] Supp. Fees App. Ex. 2 at 32-39.

---

[4] This case is the first instance of which I am aware in which a Petitioner requests reimbursement for travel expenses originally paid for in part with credit card or hotel loyalty points. Because Petitioners' provided documentation of the dollar value of the points used, I will reimburse their expenditure of points as though they had used cash.

Petitioners provided documentation of their reservation covering the September 3 through 7 period (four nights), totaling $1,212.95. *Id*.

Petitioners' hotel costs for themselves and their children were $1,212.95 for four nights, which is $303.24 per night. I find this amount to be reasonable. However, Petitioners are not entitled to reimbursement for their stay on the night of September 3 for a hearing that took place on September 5 and 6. *Broekelschen v. Sec'y of Health & Hum. Servs.*, No. 07-137V, 2011 WL 2531199, at *13 (Fed. Cl. Spec. Mstr. June 3, 2011), *mot. for rev. denied*, 102 Fed. Cl. 719 (2011) (finding that counsel's travel to Washington, D.C., two days prior to the proceeding was for her convenience and thus unnecessary). Accordingly, I will reduce Petitioners' travel costs by one night, for a total reduction of $303.24.

Finally, Petitioners have provided documentation for their airport parking and shuttle costs. Supp. Fees App. Ex. 2 at 1-2. I find these costs reasonable, and they will be paid in full.

### b. Flight and Hotel for Kathleen Svagdis

Petitioners also seek reimbursement for flight and hotel costs for Kathleen Svagdis. Petitioner's counsel, Chris Webb, communicated with my chambers via email on July 27, 2023, explaining that Kathleen Svagdis is Petitioner Jeremy Svagdis's mother and A.S.'s grandmother.[5] Ms. Svagdis traveled to Washington, D.C., from Orlando, Florida, to assist Petitioners with A.S.'s care to allow Petitioners to be present at the entitlement hearing and to meet with their counsel. Reimbursement of travel costs for family members who do not testify is generally not reasonable. *See, e.g., Gramza v. Sec'y of Health & Hum. Servs.*, No. 15-247V, 2017 WL 3574794, at *6 (Fed. Cl. Spec. Mstr. June 28, 2017) (denying reimbursement of travel costs for two family members who did not testify at the entitlement hearing). However, I find that Ms. Svagdis's presence was necessary to allow Petitioners to participate fully in the proceedings. Accordingly, Petitioners' request for reimbursement of her travel costs is reasonable and will be reimbursed.

The total cost of Ms. Svagdis's airfare is $304.96. Supp. Fees App. Ex. 2 at 13. The receipt reflects that her outbound ticket was economy class at a cost of $164.35 and that her return flight was business select at a cost of $92.73, with a total of $47.88 in taxes and fees. It is well established that petitioners and counsel in the Vaccine Program cannot be reimbursed for luxury travel costs. *See, e.g., Tetlock v. Sec'y of Health & Hum. Servs.*, No. 10-56V, 2017 WL 5664257, at *6 (Fed. Cl. Spec. Mstr. Nov. 1, 2017) (citation omitted). However, as Ms. Svagdis's business select fare was considerably lower than her economy fare and because the amount is reasonable, it will be paid in full in this instance.

Petitioners' documentation reflects that Kathleen Svagdis traveled from Orlando to Washington, D.C., on August 30 and departed on September 7, 2019 (eight nights). Supp. Fees App. Ex. 2 at 13. Petitioners request reimbursement for her hotel stay at a total cost of $1,590.07, or $198.75 per night. Supp. Fees App. Ex. 2 at 16, 40-47.

---

[5] Petitioners' documentation refers to Kathleen Svagdis by name and as "Grandmother." Supp. Fee App. Ex. 1. Mr. Webb clarified that Kathleen Svagdis and "Grandmother" are the same person.

As discussed above, costs incurred more than one day prior to an entitlement hearing as a matter of convenience are not reimbursable in the Program. *Broekelschen,* 2011 WL 2531199, at *13. In his email communications with chambers, Mr. Webb stated that Ms. Svagdis traveled to Washington, D.C. on August 30 in order to avoid travel disruption due to a hurricane. The National Weather Service reports that Hurricane Dorian was a category five hurricane when it made landfall in the Bahamas on September 1, 2019, and that there was significant wind and rain in Florida, South Carolina, and North Carolina over the following days. NAT'L WEATHER SERV., HURRICANE DORIAN SEPT. 6, 2019 (2019), https://www.weather.gov/mhx/Dorian2019. Accordingly, I find that Ms. Svagdis's travel on August 30 was reasonable under the circumstances and her hotel costs will be paid in full.

### c. Meals

Petitioners have provided receipts for meal costs for themselves and Ms. Svagdis totaling $862.61, but several of them are not itemized. *E.g.*, Supp. Fees App. Ex. 2 at 5-7, 21-22. Accounting for the arrival and departure days for each family member, the total breaks down to $23.21 per day for Ms. Svagdis from August 31 to September 2, and $30.79 per person per day for all five family members from September 3 to September 7. Because the total is reasonable and documentation was provided, the requested meal costs will be paid in full.

Total deductions of attorneys' costs: **$50.00**
Total attorney's costs to be awarded: **$12,984.63**

Total deductions of Petitioners' costs: **$303.24**
Total Petitioners' costs to be awarded: **$4,870.65**

## III. Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioners' application, as follows:

A lump sum in the amount of **$65,087.73**, representing reimbursement of Petitioner's attorneys' fees and costs in the form of a check jointly payable to Petitioners and their attorney, Mr. Michael McLaren;

A lump sum in the amount of **$4,870.65**, representing reimbursement of Petitioners' out of pocket costs in the form of a check payable to Petitioners.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[6]

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.

**IT IS SO ORDERED.**

<u>**s/ Katherine E. Oler**</u>
Katherine E. Oler
Special Master